IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



FILED
MAY 24 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION. | ) ) ) | |
| Plaintiff, | ) ) | No.   99 C 3356 |
| vs. | ) ) | Judge Warren K. Urbom |
| THE DIAL CORPORATION, | ) ) ) | |
| Defendant. | ) | |

## NOTICE OF FILING

TO:   Michael A. Warner
Seyfarth Shaw
55 East Monroe Street
Suite 4200
Chicago, IL 60603-5803

John C. Hendrickson
U.S. Equal Employment Opportunity Commission
500 West Madison Street
Suite 2800
Chicago, IL 60661

PLEASE TAKE NOTICE that on May 24, 2005, the undersigned filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, **SECOND-YEAR REPORT OF THE CONSENT DECREE MONITORS TO THE PARTIES AND TO THE COURT**, a true and correct copy of which is attached hereto.

Respectfully submitted,

George F. Galland, Jr., One of
the Consent Decree Monitors

George F. Galland, Jr.
14 West Erie Street
Chicago, Illinois  60610
(312) 751-1170

Reginald E. Jones, Esq.
Coudert Brothers, LLP
1627 I Street, NW, 11th Floor
Washington, D.C.  20006

Nancy Kreiter
380 Sheridan Rd.
Winnetka, IL 60093

# SECOND-YEAR REPORT OF THE CONSENT DECREE
## MONITORS TO THE PARTIES AND THE COURT

George F. Galland, Jr.
Reginald E. Jones
Nancy B. Kreiter

**FILED**

MAY 2 4 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

We were appointed as Decree Monitors pursuant to the Consent Decree agreed to between the Equal Employment Opportunity Commission and Dial Corporation in case no. 99-C 3356 in the United States District Court for the Northern District of Illinois. This lawsuit alleged a pattern and practice of sexual harassment of employees at Dial's plant in Montgomery, Illinois, near Aurora.

Paragraph 44 of the Decree provides:

Within two (2) months after the appointment of the Decree Monitors, they will: (i) evaluate all existing employment policies, procedures, and practices that are related to the objectives contained in the Statement of Intolerance of Sexual Harassment and this Decree; and (ii) after consultation with EEOC and Dial, make recommendations for any changes to such existing policies, procedures and practices that the Decree Monitors believe is necessary or appropriate. The Decree Monitors shall report their findings and recommendations to EEOC and Dial.

On August 29, 2003, we issued to Dial and to the EEOC the Two Month Report required by paragraph 44. The present report will refer to findings from that Two Month Report as appropriate.

Paragraph 47 of the Decree provides:

Within one (1) year after appointment, the Decree Monitors shall complete their own review and evaluation of all current employment policies and practices, and shall submit a written report to EEOC, Dial and the Court setting forth the following information:

(i) an assessment of whether Dial has successfully implemented each specific policy/practice agreed upon in paragraph 39 above;

(ii) for each specific policy/practice that has not been successfully implemented, a statement discussing the reason for Dial's failure to implement such change;

 (iii) an evaluation of the impact of the specific changes made pursuant to this Decree;

 (iv) an assessment of the effectiveness of Dial's policies and practices for the achievement of Dial's Statement of Intolerance of Sexual Harassment;

 (v) recommendations for any changes to existing practices, policies or programs or any additional policies, practices or programs that the Decree Monitors deem necessary or appropriate for achieving Dial's Statement of Intolerance of Sexual Harassment and the terms of this Decree; and

 (vi) timetables for implementation and completion of compliance with any of the recommendations, subject to the terms of this Decree.

We issued the one-year report required by this paragraph on May 26, 2004. We found Dial in compliance with all significant obligations under the Consent Decree. We found that "All evidence available to us shows that sexual harassment and related retaliation are not significant problems at the plant at the present time, and that if incidents do occur and are brought to management's attention, they will be dealt with promptly and appropriately." We made certain recommendations for further improvements.

Paragraph 47 of the Decree, after the provisions quoted above, provides that "At the end of the second year and then again at the end of the duration of this Consent Decree, the Decree Monitors shall submit a report to EEOC, Dial and the Court setting forth the same information described herein." The present report is that second-year report.

This will be a much shorter report than our first two reports, because all available evidence shows that Dial is fully in compliance with the Decree, and there has been no evidence over the past year of any significant sexual harassment problem in the plant. Given the lack of any evidence of such a problem, and the continuing evidence that Dial has dealt swiftly and appropriately with the occasional incident involving conduct that might be deemed sexual

2

harassment, the Monitors elected not to conduct the full-scale interview process for this report that was conducted for the previous report. Our present intention is to conduct such interviews in connection with the final report we are required by the Decree to prepare.

I. **DIAL'S COMPLIANCE WITH SPECIFIC OBLIGATIONS FROM PARAGRAPH 39 OF THE DECREE**

Almost all of the changes required by ¶39 were previously made, as we described in our previous reports, and there is therefore no need to comment further on these matters. We will touch on a few matters that were the subject of comment in our First Year Report.

(1) ¶39(b)(iii) imposes a best-efforts requirement of three weeks to complete investigations of complaints of sexual harassment and retaliation, with another seven days to prepare findings of the result of the investigation and remedial action proposed. Dial met this time limit in the two investigations it conducted since we issued our one-year report.

(2) ¶39(b)(iv) requires Dial to allow complainants who are dissatisfied with the disposition of a complaint the opportunity to appeal to the "Complaint Monitor." In one of the two cases referred to above, Dial imposed a written warning on the accused employee, and advised the complainant of the right to appeal, which the complainant declined to do. (While Dial's investigation and response to this complaint was entirely in line with the Decree, there was a communications error that resulted in Dial not informing the Complaint Monitor about the matter until the Monitors found out about it through other means.) In the other case, Dial terminated the employee. Dial interpreted the Decree not to require advice to the complainant of the right to appeal, since the purpose of the Decree was clearly to give a complainant the right to argue that Dial's discipline was insufficient, not to argue that the discipline was excessive. We

3

concur with this interpretation.

(3)     Decree ¶39(c)(i) provides:

Dial agrees that it shall impose discipline – up to and including termination, suspension without pay, or demotion – upon any supervisor or manager who engages in sexual harassment or tolerates any such conduct in his or her work area or among employees under his or her supervision, or who retaliates against any person who complains or participates in any investigation or proceeding concerning any such conduct. Dial shall communicate this policy to all of its supervisors and managers.

No accusations of sexual harassment against supervisors or managers have been made since the Decree took effect.

(4)     Section 39(b)(ii) requires Dial to continue to advise all managers and supervisors of their duty to monitor their work areas to ensure employees' compliance with the No Harassment or Retaliation Policy, and to report any incidents and/or complaints of sexual harassment and/or retaliation of which they become aware. In our one-year report, we recommended

> that Human Resources provide ongoing guidance to supervisors to conduct activities in team meetings, at least on a quarterly basis beginning no later than July 1, 2004, that promote awareness of the No Harassment or Retaliation policy and to conduct proactive measures to prevent sexual harassment. To prevent such activities from turning into a rote or perfunctory exercise that never varies in content, Human Resources should become involved in planning the activities that supervisors will be asked to conduct and should take steps to assure that supervisors carry out the activities as planned on a reasonable uniform plantwide basis. We request that the Human Resources Director apprise us of each quarter's guidance to supervisors and provide verification of supervisor compliance.

Dial accepted this recommendation and has complied with it, designing a short refresher course outline for supervisors' use in team meetings that were conducted in September and October 2004, December 2004, and March 2005. The Monitors received a copy of the training materials

4

and verification of supervisor compliance in each quarter. Dial plans to continue to implement this recommendation. In considering what material to use in forthcoming team meeting sessions, we again recommend that Dial vary the material. Dial wisely makes use of the "red, yellow, and green zones" theme from its on-line training. However, all of the examples used to date were obvious "red zone" violations of its anti-harassment policy. In upcoming repetitions of this team-meeting exercise, Dial should consider giving somewhat more challenging examples to provoke more in-depth discussion among attendees.

(5) In ¶39(c)(iii), Dial agreed to "use in its supervisor appraisal process, an evaluation of the supervisor's handling of equal employment opportunity ("EEO") issues, and to link such evaluations directly to supervisor salary/bonus structure." In our one year report, we asked Dial to provide us, by the end of the next evaluation cycle, with copies of specific material that comments in any manner on specific supervisors' performance or nonperformance in the area of EEO (names of evaluated employees should be deleted). In response, Dial provided us with several such examples, all of which reflected favorable evaluations of EEO commitment.

(6) Under ¶39(d)(i), Dial must continue to provide mandatory sexual harassment prevention training annually to all supervisors at the plant, to provide training to all new employees during employee orientation, to provide training to all "senior management officials," and to all Dial employees who are to be assigned to work at the plant, before their assignment begins.

In our one-year report, we recommended that the company immediately follow up to assure that on-line training is given to employees who for one reason or another, such as absence or technological barriers, missed the first round, since we became aware through interviews of

people who did miss the training for such reasons. Dial complied with this recommendation and notified us of the results.

Our one-year report also recommended that Dial design a refresher version of sexual harassment prevention training to be given every one to two years. We stated:

> Providing refresher training was supported by the vast majority of the employees we interviewed and seems particularly appropriate given the difficulty many people have in remembering even the fact of prior training in this area. The length and format of such refresher training is left to the company in light of its other training programs and logistics. Strong consideration should be given to including live discussion in such refresher training, since the ability to ask questions is the main missing ingredient from any on-line training format. We request that Dial advise us of plans for such refresher training, as well as the opportunity to review the content.

Dial agreed with this recommendation and specifically has agreed to provide refresher training for nonsupervisory employees in the fall of 2005. We again recommend that strong consideration be given to including live discussion in the next version of that training. Since our final report will be issued November 1, 2005, we would renew this request to be advised prior to our departure of whether Dial plans to include oral training or whether it will rely only on on-line training, and to allow us to review the content of the proposed training. We would request to be notified of these matters by September 1, 2005 if possible.

Decree ¶39(d)(i) expressly requires training for all new hires during employee orientation. In connection with this obligation, our one-year report noted that "Dial complies by having its Human Resources Manager review the No Harassment or Retaliation Policy with new hires during the orientation process," and recommended that "henceforth Dial give the appropriate on-line course to new hires and employees transferred to the Montgomery plant who have not taken that course before." Dial has complied with this recommendation.

6

Decree ¶39(d)(i) expressly requires mandatory sexual harassment prevention training annually for all supervisors at the plant. In fall 2004 Dial complied with this requirement by repeating the on-line course for supervisors and has agreed to provide the content of the 2005 annual supervisory training course for our review prior to presentation. As in our prior discussion of the refresher training being designed for nonsupervisory employees in the fal of 2005, we recommend that strong consideration be given to including live discussion in the next version of supervisory training. Since our final report will be issued November 1, 2005, we would renew this request to be advised prior to our departure of whether Dial plans to include oral training or whether it will rely only on on-line training, and to allow us to review the content of the proposed training. We would request to be notified of these matters by September 1, 2005 if possible.

(7) We also made one recommendation in the one-year report not specifically covered by the Decree. We commented on Dial's internal policy discouraging romantic relationships between supervisors and subordinates and recommended that Dial take, within 30 days, whatever concrete steps it deemed necessary to disseminate and reinforce to its supervisors the existence and importance of this policy, and to inform us of the actions taken. Dial provided an acceptable response to this recommendation.

## II. THE CURRENT CLIMATE IN THE PLANT WITH RESPECT TO CONTROL OF SEXUAL HARASSMENT

The Decree requires our report to assess "the effectiveness of Dial's policies and practices for the achievement of Dial's Statement of Intolerance of Sexual Harassment."

In our one-year report, we stated that "All evidence available to us shows that sexual harassment and related retaliation are not significant problems at the plant at the present time,

7

and that if incidents do occur and are brought to management's attention, they will be dealt with promptly and appropriately." There is every reason to believe that this remains the case.

First, there have been almost no formal complaints to management about sexual harassment over the past year, which is good evidence that matters are firmly under control. One case involved an inappropriate sexual comment; the other involved use of the company email to send inappropriate materials to a coworker.

Second, management in both cases reacted appropriately to the situations that were brought to its attention.

Third, while we did not conduct interviews in connection with this report, we did send a letter to all employees offering them the opportunity to be interviewed by us by phone in their homes if they wished. Only one employee took advantage of this offer, and the information provided by that employee was highly encouraging as to the present state of affairs in the plant.

The experience of the second year of the Decree is consistent with the experience of the first year. Cumulatively, in the two years thus far of the Decree, there have been only three incidents of violation of the anti-harassment policy brought to management's attention, and no complaints have been made to any outside agency during that period of sexual harassment. Of the incidents over the two year period, two resulted in discharge of the accused employee.

### III. SUMMARY

The specific affirmative steps required by the Decree have long since been taken or are continuing to be taken in compliance with the Decree. Given the ongoing compliance of Dial with the Decree and the satisfactory situation in the plant from the point of view of control of

sexual harassment, nothing beyond these minimal recommendations and requests are needed in this report. We will review the situation in more detail in our final report.

_____
GEORGE F. GALLAND, JR.

_____
REGINALD E. JONES

_____
NANCY B. KREITER

May 20, 2005

## CERTIFICATE OF SERVICE

The undersigned, under penalty of perjury, certifies that on May 23, 2005, a copy of the foregoing SECOND-YEAR REPORT OF THE CONSENT DECREE MONITORS TO THE PARTIES AND TO THE COURT was served on the above attorneys by messenger.

*[signature]*